IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CV-00167-D

**Donna Jane Moore,**

              Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

              Defendant.

**Memorandum & Recommendation**

      Plaintiff Donna Jane Moore instituted this action on September 3, 2014 to challenge the denial of her application for social security income. Moore claims that Administrative Law Judge Marcus Christ erred in failing to find that she meets or equals the criteria for Listing 1.05B and in failing to credit the testimony of the Vocational Expert ("VE") that there were no jobs in the national economy that she could perform. Both Moore and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, filed motions seeking a judgment on the pleadings in their favor. D.E. 42, 44.

      After reviewing the parties' arguments, the court has determined that ALJ Christ erred in his decision. Although substantial evidence supports his finding that Moore's impairments do not meet all the criteria of Listing 1.05B, ALJ Christ failed to consider whether Moore's history of frequent hospitalizations would affect her ability to sustain gainful employment. Therefore the undersigned magistrate judge recommends[1] that Moore's Motion for Judgment on the Pleadings

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

be granted, that Colvin's Motion for Judgment on the Pleadings be denied, and that the Commissioner's final decision be remanded for further consideration.

## I. Background

### A. Procedural History

On November 17, 2010, Moore filed an application for disability insurance benefits on the basis of a disability that allegedly began on October 19, 2010. After her claim was denied at both the initial stage and upon reconsideration, Moore appeared before ALJ Christ for a hearing to determine whether she was entitled to benefits. After the hearing, ALJ Christ determined that Moore was not entitled to benefits because she was not disabled. Tr. at 9–23.

In his decision, ALJ Christ found that Moore had the following severe impairments: diabetes mellitus, coronary artery disease status post stent placements, hypertension, chronic kidney disease, and physical limitations following a right toe amputation and a below-the-knee amputation of the right lower extremity. *Id*. at 11. ALJ Christ also found that her impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 14. ALJ Christ determined that Moore had the Residual Functional Capacity ("RFC") to perform sedentary work with the following limitations: can never climb ladders, ropes, or scaffolds; can only occasionally climb ramps and stairs and balance; and she is limited to jobs allowing her to use a hand-held assistive walking device. *Id.* at 16. ALJ Christ also concluded that Moore was capable of performing her past work as a hospital secretary. *Id.* at 21. ALJ Christ further found that, considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she was capable of performing, including assembler, addresser, switchboard operator and order clerk. *Id.* at 22. Thus, ALJ Christ found that Moore was not disabled. *Id*. After unsuccessfully seeking review by the Appeals Council,

Moore commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on September 3, 2014. D.E. 6.[2]

**II.	Analysis**

    **A.	Standard for Review of the Acting Commissioner's Final Decision**

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

    **B.	Standard for Evaluating Disability**

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is

---

[2] On September 9, 2014, the Commissioner found that Moore became disabled as of July 26, 2013. D.E. 43, p. 11; D.E. 43-1.

equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's RFC is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Listing 1.05B

The Listings describe impairments, organized into sections corresponding to major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a). If a claimant's impairments meet a listing, that fact alone establishes that the claimant is disabled. *Id.* §§ 404.1520(d), 416.920(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Social Security Ruling ("SSR") 83–19, 1983 WL 31248, at *2 (1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

Even if an impairment does not meet the listing criteria, it can still be deemed to satisfy the listing and the claimant thereby deemed to be disabled if the impairment medically equals the criteria. 20 C.F.R. §§ 404.1520(d), 404.1525(c)(5), 416.920(d), 416 .925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. §§ 404.1526(a), 416.926(a) (medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of

his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

The relevant listing, 1.05B, Amputation (due to any cause), provides:

…

> B. One or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively, as defined in 1.00B2b, which have lasted or are expected to last for at least 12 months . . . .

20 C.F.R. Part 404, Subpart P, App. I, § 1.05B. However, the introductory language for all musculoskeletal impairments listed under Section 1.00 states:

> Regardless of the cause(s) of a musculoskeletal impairment, functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, or the inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment.

20 C.F.R. 404, Subpt. P, App. 1, § 1.00(a). In his decision, ALJ Christ addressed Moore's recent below-the-knee amputation and whether she was unable to ambulate effectively, stating:

> I have evaluated the claimant's great right toe amputation and right below the knee amputation under Listing 1.05, however this listing requires evidence of an inability to ambulate effectively. The claimant's right toe amputation occurred in January 2013, and at the March 2013 hearing, the claimant testified she was able to ambulate with a walking boot and walker. The claimant's right below the knee amputation was performed in April 2013. There are no postoperative treatment notes documenting the claimant's gait, and there is no evidence to suggest that the claimant's ability to ambulate effectively would not be restored within 12 months after her surgery. Even assuming the claimant ultimately requires a prosthesis, the prosthesis may help her ambulate independently and because there is no evidence to suggest her ability to ambulate effectively will not be restored within 12 months of onset, the requirements of this listing are not met.

Tr. at 15. Thus, he concluded, Moore failed to demonstrate an inability to use a prosthetic device to ambulate effectively. *Id.*

Moore contends that the medical evidence demonstrates that she began experiencing right toe pain in May 2012 and sustained a laceration to her right great toe. *Id.* at 1991, 1742. She received treatment for her right toe in June and July 2012. *Id.* at 1987, 1979, 1983. In August

5

2012, physicians at UNC Hospital noted that swelling and darkening of her right foot, and she reported great difficulty walking. *Id.* at 1981. She received follow-up treatment for her toe in August, September, and January. *Id.* at 2453, 2455, 2469. As a result of gangrene and diabetic complications, Moore had her right great toe amputated in January 2013. *Id.* at 2459, 2599. Moore was a patient at New Hanover Regional Medical Center from March 14, 2013 to March 22, 2013, at which time providers believed she was suffering from sepsis at the site of her amputated toe. *Id.* at 2864. Examination revealed significant necrosis and an MRI evidenced edema in her forefoot. *Id.* at 2868, 2874. Just over one week after her discharge at the hearing before ALJ Christ, Moore was using a rolling seat walker to ambulate. *Id.* at 2774.

Additionally, Moore has submitted medical evidence after ALJ Christ's decision and post-dating the relevant time period at issue before ALJ Christ.[3] An October 6, 2013 medical record from Dr. Ziaollah Hashemi at Dosher Memorial Hospital noted that Moore was experiencing pain and swelling in her lower extremity. D.E. 43-2. Examination showed swelling, warmth, erythema and purulent drainage at the sight of her right lower extremity amputation. *Id.* The medical report also noted that the stump had several area ulcers 2–4 millimeters in size oozing pus. *Id.* On March 21, 2014, Moore again presented to Dosher Memorial Hospital's Emergency Department complaining of difficulty walking. D.E. 43-3. The medical report noted that Moore used a cane to walk and that her fall risk assessment factors included a past history of falls and mobility impairment. An examination found that Moore's skin had broken down, and that she had chaffing on the right stump. *Id.*

The Commissioner contends that Moore did not have an amputation "at or above the tarsal region" prior to the hearing before ALJ Christ. "Tarsal" refers to the hind foot or ankle

---

[3] This additional evidence was not presented to the Appeals Council.

region. 20 C.F.R. Part 404, Subpart P, Appx. B, § 1.00F. Although she had undergone a right major toe amputation in January 2013, the March 28, 2013 hearing occurred prior to her April 2013 lower leg amputation. Only this second amputation, not the first, qualifies as an "amputation at or above the tarsal region" for purposes of Listing 1.05B.

Despite this argument, however, ALJ Christ considered whether Moore was disabled from her alleged onset date, October 19, 2010, through the date of the decision, July 2, 2013. Tr. at 22. Thus, the hearing date, which occurred prior to her lower right leg amputation, does not serve as a cut-off for consideration her impairments. Moreover, ALJ Christ identified her lower right leg amputation as a severe impairment. *Id.* at 11.

Moore has failed to carry her burden of establishing that she meets or equals Listing 1.05B for the relevant time period of October 19, 2010 through July 2, 2013. As noted above, the removal of her right major toe does not qualify as an amputation at or above the tarsal region, regardless whether it resulted in an inability to ambulate effectively. Furthermore, although her right lower leg amputation in April 2013 meets the first factor of Listing 1.05B by being an amputation at or above the tarsal region, Moore has not shown "stump complications resulting in medical inability to use a prosthetic device to ambulate effectively" from the time of this surgery through the date of ALJ Christ's decision. There is no medical evidence in the record establishing this element between April 2013 and July 2013. The evidence she now presents, medical reports from October 2013 and March 2014, falls outside of the relevant time frame under consideration by ALJ Christ.

Accordingly, Moore has not carried her burden at step three by demonstrating she has satisfied all the requirements of Listing 1.05B so as to be found disabled at that step. Therefore,

7

ALJ Christ did not err in concluding that Moore did not meet or equal this Listing. There being no error, this issue does not warrant remand.

**D.     VE testimony**

Moore next asserts that ALJ Christ erred in failing to credit the VE's testimony that there were no jobs that she could perform. As noted above, ALJ Christ found, at step four, that Moore could perform her past work as a hospital secretary. Tr. at 21. ALJ Christ also made findings at step five, based on VE testimony, that there were jobs in the national economy that she could perform. These included assembler, addresser, switchboard operator, and order clerk. *Id.* at 22.

Moore submits that she could not perform her past work, or any work, given her high number of hospital visits and admissions. She maintains that the medical records demonstrate that she was admitted to the hospital two or more days per month.[4] The VE testified that there were no jobs that existed in the national economy for Moore if she missed two days per month due to her medical conditions. *Id.* at 135. The Commissioner argues that, in spite of her medical issues and hospitalizations, Moore was able to sustain a part-time job, expressed a willingness to work full-time and did not leave her job due to medical impairments. ALJ Christ additionally noted that Moore was frequently non-compliant with her medical regimen to address her diabetes and cardiovascular conditions. Tr. at 19.

Evidence of frequent hospitalizations is relevant to an ALJ's decision. *See Kangas v. Bowen*, 823 F.2d 775, 778 (3d Cir. 1987) (recognizing that a claimant cannot be expected to retain a full-time job if he or she suffers from a condition requiring "frequent hospitalizations"); *Sweeney v. Comm'r of Soc. Sec.*, 847 F. Supp. 2d 797, 806 (W.D. Pa. 2012) (observing that the

---

[4] She asserts that, based on the medical evidence, she would have been absent from work: 27 days in 2011, 26 days in 2012, and 76 days in 2013.

8

ALJ failed to consider a claimant's frequent hospitalizations and remanding for further consideration); *see also O'Mahony v. Colvin,* No. 1:13-cv-35, 2015 WL 3505211, at *4 (M.D.N.C. June 3, 2015) (unpublished); *Rizzo v. Astrue*, No. 8:09–CV–477–T–TGW, 2010 WL 137805, at *2 (M.D. Fla. Jan. 12, 2010) (unpublished) (ordering remand because the ALJ failed to consider potential numerous absences from work due to impairment). It cannot be disputed that the medical evidence of record clearly demonstrates a history of hospitalizations that, if they were to continue, could reasonably suggest that Moore would be absent from work two or more days per month. ALJ Christ, however, did not make a finding on this issue. Given that the VE testified that there was no work compatible with such frequent absences, further consideration of this issue is warranted. For this reason, the undersigned recommends that court grant Moore's motion for judgment on the pleadings on this issue.

      **E.    Remand**

Moore next asserts that the matter should be remand with a directive that benefits be paid, as opposed to remanding for further consideration. The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one which "lies within the sound discretion of the district court." *Edwards v. Bowen*, 672 F. Supp. 230, 236 (E.D.N.C. 1987). Reversal without remand is appropriate where the record does not contain substantial evidence to support a decision denying disability and reopening the record for more evidence would serve no purpose. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987). Inasmuch as ALJ Christ did not discuss whether Moore would likely be absent from work two or more times per month, based on her past hospital visits, the prudent approach is to remand for further consideration. Such an outcome would allow ALJ Christ to make a finding, with sufficient reasoning, as to whether or not Moore's past hospitalizations would impact her ability to maintain regular attendance in a

9

position.  Accordingly, remand for further consideration appears the appropriate avenue to address this issue.

## III.    Conclusion

For the forgoing reasons, the court recommends that Moore's Motion for Judgment on the Pleadings should be granted, that Colvin's Motion for Judgment on the Pleadings should be denied, and that the Commissioner's final decision be remanded for further consideration.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel.  Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation.  The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the**

**Memorandum and Recommendation.** *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Dated: August 10, 2015.

                                          */s/ Robert T. Numbers II*
                                          ROBERT T. NUMBERS, II
                                          UNITED STATES MAGISTRATE JUDGE